UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSICA K. OLIVARES,

    Plaintiff,

v.                                                                     Case No. 1:20-cv-821
                                                                    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her application for disability insurance benefits (DIB) and supplemental security income (SSI).

        On October 30, 2017, plaintiff filed applications for DIB and SSI, alleging a disability onset date of September 19, 2017.  PageID.56.  Plaintiff listed her disabling conditions as depression, bipolar disorder, attention deficit disorder (ADD), post traumatic stress disorder (PTSD), bulimia, anorexia, body dysmorphic disorder, suicide attempt, anxiety and chronic back pain.  PageID.266.  Prior to applying for benefits, plaintiff completed two years of college and had past employment as a general duty nurse and cashier.  PageID.67-68.  The administrative law judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on May 31, 2019.  PageID.56-69.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.     ALJ's DECISION

Plaintiff's applications failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of September 19, 2017, and that she met the insured status requirements of the Social Security Act through September 30, 2018. PageID.59. At the second step, the ALJ found that plaintiff has severe impairments of: depressive, bipolar and related disorders; attention deficit hyperactivity disorder (ADHD); personality and impulse control disorders; trauma and stressor-related disorders (PTSD); and eating disorder. PageID.59. At the third step, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.60.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform no work above SVP 2 level; can tolerate occasional general public, co-worker, and supervisor interaction; can never perform rapid pace or production quota work; and can tolerate occasional work setting / work process changes.

PageID.62. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.67.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at all exertional levels in the national economy. PageID.68-69. Specifically, the

ALJ found that plaintiff can perform the requirements of occupations such as housekeeping cleaner (light exertional 750,000 jobs), office helper (light exertional 330,000 jobs), and production inspector (light exertional 135,000 jobs). PageID.69. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from September 19, 2017 (the alleged disability onset date) through May 31, 2019 (the date of the decision). PageID.69.

### III. DISCUSSION

Plaintiff has raised errors related to the evaluation of plaintiff's residual functional capacity (RFC) determination and the vocational expert (VE) testimony.

> **A. The ALJ's RFC findings are contrary to law and not supported by substantial evidence.**
>
> **1. The ALJ failed to comply with 20 C.F.R. § 404.1520c and § 416.920c by failing to properly consider the opinions of plaintiff's medical providers.**

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. §§ 404.1520c(b) and 416.920c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5) and 416.920c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2).[1]  If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. §§ 404.1520c(b)(3) and 416.920c(b)(3) (internal citations omitted).

In addition, the new regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1).  Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*.  "We are not required to articulate how we considered

---

[1] The regulations explain "supportability" in the following terms: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

The regulations explain "consistency" in the following terms: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

6

each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

As one court observed, "[t]hese new regulations plainly are less demanding than the former rules governing the evaluation of medical source opinions, especially those of treating sources." *Hardy v. Commissioner of Social Security*, -- F. Supp. 3d. --, 2021 WL 3702170 at *4 (E.D. Mich. Aug. 13, 2021). Nevertheless, the new regulations set forth a minimum level of articulation for a reviewing court. *Id*.

> **a. Substantial evidence does not support the finding that Jennifer Richardson, PA-C and Diane Kanous, MA, LLP's opinions were not persuasive**.
>
> **b. The ALJ's finding that the opinions of the non-examining physicians were persuasive is not supported by substantial evidence.**

Plaintiff's treating medical providers. PA-C Richardson and Diane Kanous, MA, LLP found that plaintiff had significant mental impairments. Plaintiff contends that the ALJ did not appear to consider factors under 20 C.F.R. §§ 404.1520c and 416.920c, including the treating relationship with plaintiff, the length of the treating relationship and the frequency of examinations. In addition, plaintiff states that her daily activities were limited.

In Exhibit 10F (PageID.764-766) (February 25, 2019), PA-C Richardson opined that plaintiff

> was seriously limited in her abilities to maintain attention for two hour segments, perform at a consistent pace without an unreasonable number of rest periods, accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; and was unable to meet competitive standards with regard to working in coordination with others, completing a normal work day without interruptions from symptoms, getting along with coworkers or peers, and dealing with normal work stress. Further, this provider opined the claimant had no limitation and understanding, remembering, or applying information; moderate limitation adapting or managing oneself; and

>marked limitations in interacting with others and maintaining concentration, persistence or pace (Ex. 10F/1-2).

PageID.66.

The ALJ found that the limitations with respect to interacting with others and concentrating, persisting and maintaining pace were not supported

>by the mostly mild mental status exam findings and inconsistent with the record as a whole, which does not show any significant deficits with concentration or socialization to justify marked limitations in these areas of mental functioning (Ex. 3E; lF/7, 10, 12, 13, 45, 48, 56, 71-73; 2F/51,105-106; 3F/22; 4F/6-8; 5F/1, 11; 6F/3, 8, 25, 20, 25, 26; 7F; 8F/43, 44, 74; 14F/1; 17F/27, 36, 39, 41, 47, 49, 63; 18F/26; 19F). For example, the claimant was often noted to be cooperative and have good eye contact during therapy appointments, and got along reasonably well with her medical providers. Moreover, there was rarely, if ever, any notes in the claimant's charts documenting any significant observed difficulties with concentration during appointments.

*Id.*

The ALJ's conclusion that some of PA-C Richardson's opinions with respect to "interacting with others" and "concentrating, persisting and maintaining pace" were unpersuasive is not supported by substantial evidence. Plaintiff appears to have serious mental conditions which have provided a challenge to her medical providers and which interfere with both her personal interactions and her ability to concentrate. In this regard, PA-C Richardson's transcribed statement of March 4, 2019 (Exh. 13F) (PageID.792-794), demonstrates the insight that the treating medical provider has in plaintiff's condition, stating that plaintiff "is a great example of what we call apparent competence," *i.e.*,

>When you meet her and by her presentation and her makeup and the way she initially talks she seems as if she is very stable and balanced. It is not until you start to see or hear the history or start to talk to her longer that you realize that some of the things that she is focused on significantly are tainted by trauma, by personality disorder symptoms, by mood dysregulation. So, when you meet her, you would never thing that she attacked her 14-year-old daughter. When you meet her, you would not think that she has attempted suicide. When you meet her, you don't think that she is inaccurately reporting some non-reality based situations until

8

> you get to know her better and then the story becomes more clear and you see wow this person really has challenges with her everyday living.

PageID.793-794. With respect to interacting with others, PA-C Richardson also noted that plaintiff's response of assaulting her eldest daughter and attempting suicide was "an intense response to what I would say is probably normal teenage behavior." Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate PA-C Richardson's opinions with respect to plaintiff's ability to interact with others and her ability to concentrate, persist, and maintain pace.

The ALJ addressed opinions given by Ms. Kanous on February 27, 2019 (Exh. 12F, PageID.780-791) and March 4, 2019 (Exh. 14F, PageID.795-800). In February 2019, Ms. Kanous opined that plaintiff had such serious impairments that she could not regularly attend work and would be absent due to treatment:

> opined the claimant was seriously limited in remembering work-like procedures, making work-related decisions, performing at a consistent pace, and being aware of normal hazards; was unable to meet competitive standards with regard to carrying out very short and simple instructions, maintaining attention for two hour segments, understanding and remembering very short and simple instructions, sustaining an ordinary routine without special supervision, working in coordination with others, completing a normal work day and workweek without interruptions from symptoms, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, responding appropriately to changes in a routine work setting, and dealing with normal work stress; and had no useful ability to function with regard to maintaining regular attendance and being punctual with then customary, usually strict tolerances (Ex. 12F/1-2). Moreover, she opined the claimant had a marked limitation in understanding, remembering, or applying information; and extreme limitations in interacting with others, maintaining concentration, persistence, or pace, and adapting or managing oneself (Ex. 12F/2). Accordingly, she opined the claimant would likely be absent more than four days per month to two [sic] her impairments or treatment (Ex. 12F/2).

PageID.66-67.

The ALJ found these opinions unpersuasive

9

> because there is no substantial evidence to support extreme limitations in any area of mental functioning. In fact, exam findings have been routinely unremarkable, or otherwise mild, and the claimant has maintained a degree of functioning necessary to take care of herself and her infant child without the use of psychotropic medication, graduate from mental health court, and interact appropriately with her medical providers.

PageID.67.

The ALJ continued,

> Further, in March 2019, Diane Kanous, MA LLP opined which would potentially prohibit her from maintaining any kind of schedule because of excessive absences. In addition, she opined that, when the claimant was able to go to work, she worked at a slower pace and the pace had caused her to frustrate supervisors, and moreover, she had difficulty at work by getting confused and asking questions from employers (Ex. 14F/5). I find these opinions unpersuasive because they are inconsistent with the claimant's demonstrated capacities, including her abilities to comply with the stringent requirements of mental health court, including regular attendance at therapy appointments multiple times per week.

PageID.67.

The ALJ's wholesale rejection of Ms. Kanous' opinions are not supported by substantial evidence. With respect to plaintiff's medication, the record suggests that plaintiff ceased certain medications while breast feeding her infant, *i.e.*, after discussion of risks, benefits, and side effects of medication, plaintiff's medications were not ordered "due to breast-feeding and significant challenges with medications in the past." PageID.625. While the ALJ refers to the stringent requirements of mental health court, he does not explain those requirements and how they would relate to an employment setting. Finally, the Court notes that the ALJ's review of Ms. Kanous' opinions does not cite records of plaintiff's interaction with Kanous from January 2017 through March 2019. *See* Exhibits 17F (PageID.806-868) and 19F (PageID.898-958). Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Ms. Kanous' opinions.

Plaintiff also contends that the ALJ improperly found the opinions of state agency consultant Collette Simone, PsyD "mostly persuasive," because the opinions were based on an incomplete record and the ALJ overstated plaintiff's ability to care for herself and her infant. Plaintiff's Brief (ECF No. 17, PageID.1029).

The ALJ addressed Dr. Simone's opinions as follows:

> I considered the opinions of state agency consultant Colette Simone PsyD, who opined the claimant had mild limitations and understanding, remembering, or applying information and adapting or managing oneself; and moderate limitations in interacting with others and concentrating, persisting, or maintaining pace (Ex. 1A/7). Further, she opined the claimant retain the capacity to complete routine, two-step tasks on a sustained basis in a low-stress environment, defined as a quiet/calm environment with no fast-paced/high productivity requirements, and in frequent changes with adequate preparation, training, and support, with limited contact with the general public, coworkers, and supervisors (Ex. lA/11). I find these opinions mostly persuasive, although the record appears to support a somewhat greater degree of limitation with regard to adapting or maintaining oneself, particularly as it relates to the claimant's September 2017 suicide attempt (Ex. 1F/10, 12, 13, 45, 48; 2F/51). However, the remainder of the ratings appear to be reasonably supported by the exam findings relied upon by the consultant, as set forth in her report, and mostly consistent with the medical evidence as a whole, which shows that, despite symptoms of depression and other related mental impairments, the claimant has retained the ability to care for herself throughout her pregnancy, make good choice to avoid risk during her pregnancy, and take care of her infant child and herself after delivery, without the use of medication. In fact, the claimant was able to complete the mental health court diversion program and meet all of the stringent requirements (Ex. 3E; 1F/7, 10, 12, 13, 45, 48, 56, 71-73; 2F/51, 105-106; 3F/22; 4F/6-8; 5F/1, 11; 6F/3, 8, 25, 20, 25, 26; 7F; 8F/43, 44, 74; 14F/1; 17F/27, 36, 39, 41, 47, 49, 63; 18F/26; 19F).

PageID.65.

Dr. Simone entered her opinion on January 19, 2018, based on the records available at that time. With respect to plaintiff's claim that the records were incomplete, the Court notes that there will always be a gap between the time the agency experts review the record, give their opinions, and the time the hearing decision is issued. *See Kelly v. Commissioner of Social Security*, 314 Fed. Appx. 827, 831 (6th Cir. 2009). "Absent a clear showing that the new evidence renders

11

the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand." *Id*. (approving lower court's analysis). The issue on review is whether the evidence submitted after the state agency assessment fatally undermines the accuracy of that assessment. *Id*. Here, the opinions given by PA-C Richardson and Ms. Kanous in 2019 undermine the opinions given by Dr. Simone in 2018. On remand, after the Commissioner re-evaluates the opinions of PA-C Richardson and Ms. Kanous, she should re-evaluate Dr. Simone's opinions to determine whether the post-January 19, 2018 medical record undermines the accuracy of Dr. Simone's assessment.

> **2. The ALJ did not comply with 20 C.F.R. §404.1529 and §416.929 when he addressed plaintiff's subjective symptoms, and his corresponding conclusions are not supported by substantial evidence.**
>
> **3. The RFC determination failed to consider all plaintiff's well-documented impairments as required by 20 C.F.R. § 404.1520a and § 416.920a, SSR 98-6p and SSR 85- 15.**

Plaintiff contends that the ALJ's finding that her subjective symptoms were not as severe as alleged is not supported by substantial evidence and that the ALJ failed to assess her symptoms as required by 20 C.F.R. § 404.1529(c). Plaintiff's Brief at PageID.1033. Specifically, plaintiff contends that the ALJ failed to consider her paranoia, panic attacks, and the need to isolate or take unscheduled breaks. PageID.1031.[2] The record reflects that the ALJ identified plaintiff's reported conditions, PageID.62-63, and addressed her medical record with respect to those conditions, PageID.63-67. The issues presented to the Court are whether the ALJ's findings regarding the severity of those conditions are supported by substantial evidence. As discussed, *supra*, some of the ALJ's findings are not supported by substantial evidence. Accordingly, this claim of error is denied.

---

[2] Plaintiff's argument does not include citations with respect to these conditions.

12

### B. The ALJ's hypothetical to the VE did not accurately describe plaintiff's established limitations.

Plaintiff states that DDS consultant Rose Moten, Ph.D., PA-C Richardson and Ms. Kanous were all in agreement that plaintiff would be off-task at least 40% of the workday or have a marked impairment. Plaintiff's Brief at PageID.1034. Plaintiff contends that the ALJ failed to include any time off task or absenteeism in the RFC and corresponding hypothetical question posted to the VE, that these are not supported by substantial evidence, and resulted in an incomplete hypothetical question. *Id*.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. As discussed, the Commissioner will need to re-evaluate the opinions of PA-C Richardson and Ms. Kanous. The basis for the present vocational evidence (*i.e.*, that plaintiff can perform 1,215,000 jobs) is no longer viable, being based in part on the ALJ's evaluation of the Richardson and Kanous opinions. Until those two opinions are re-evaluated, and any adjustments are made to the RFC, it would serve no purpose to address this obsolete vocational evidence. Accordingly, plaintiff's claim of error is denied. However, if plaintiff's RFC should change on remand, the Commissioner should re-evaluate the vocational evidence.

## IV. CONCLUSION

Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed: (1) to re-evaluate PA-C Richardson's opinion with respect to plaintiff's ability to interact with others and her ability to concentrate, persist, and maintain pace; (2) to re-evaluate Ms. Kanous' opinions from February 27, 2019 and March 4, 2019; (3) to re-evaluate Dr. Simone's January 19, 2018 opinion to determine whether the post-January 19, 2018 medical record undermines the accuracy of that opinion; and, (4) if the re-evaluation of these opinions changes plaintiff's RFC, then the ALJ shall re-evaluate the vocational evidence in light of the revised RFC.  A judgment consistent with this opinion will be issued forthwith.

Dated: March 24, 2022                               /s/ Ray Kent
                                                    United States Magistrate Judge